IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

COREY LYNN WILCOX, #0242005       §

VS.       §       CIVIL ACTION NO. 6:22cv322

JEFFREY BUELL       §

## REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Corey Lynn Wilcox, a prisoner confined at the Wainwright Unit within the Texas Department of Criminal Justice (TDCJ), proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit complaining of alleged violations of his constitutional rights while incarcerated inside the Gregg County Jail. The case was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

For reasons explained below, the Court recommends that Defendant Buell's motion for summary judgment, (Dkt. #53), be granted and that Plaintiff's lawsuit be dismissed with prejudice.

## I. Wilcox's Amended Complaint

The operative pleading in this lawsuit is Wilcox's amended complaint, (Dkt. #7). Generally, an amended complaint entirely supersedes and takes the place of the original complaint. *See Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736 (5th Cir. 1986). In his amended complaint, he raises claims concerning alleged excessive use of force. Specifically, he maintains that

> On 7-25-2022 at the Gregg County Jail – North Jail – upstairs in front of the control room, while I was sick with COVID-19 and strep throat, I was in handcuffs sitting in a chair when Officer Jeffrie Buell told me to shut up twice and then came up to me and punched me in my face. This action left my nose sore for several days. I was completely helpless an unable to defend myself. Since this in[cident] I've had to increase my medication that I take for post traumatic stress disorder and anxiety. I live in fear of not knowing when another officer might hit me. I've suffered enough from the physical, mental, and emotional abuse from officer Jeffrie Buell.

(Dkt. #7, pg. 4). Wilcox seeks $50,000 for physical, mental, and emotional abuse.

1

**II. Defendant Buell's Motion for Summary Judgment**

Buell moves for summary judgment for several reasons, providing additional factual context through an affidavit, (Exhibit A), that Wilcox does not refute. He explains that on the day of the incident, during his shift, officers observed Wilcox destroying a computer kiosk inside his cell. A supervising officer ordered Buell to enter Wilcox's cell to "stop him from further destruction," and Buell arrived at the cell with another officer. Buell notes that he was aware that Wilcox had just been sentenced to imprisonment earlier that day. When entering the cell, Buell observed damaged property—that Wilcox "had ripped the television and other items off of the wall and destroyed them," which "made him realize that [Wilcox's] behavior had been violent," (Dkt. #53, pg. 7). Buell explains that he then feared for his safety and that of the other officers and inmates in the vicinity.

When Buell and other officers entered the cell, Wilcox "immediately sat down on his bunk," and he was instructed to place his hands on the wall—to which Wilcox replied, "Make me!" Buell notes that Wilcox's refusal to comply with orders made him fear for his and others' safety; the "officers approached Wilcox and placed their hands on his arms in an attempt to get him to stand up off of the bed," (Dkt. #53, pg. 8). Buell explains that Wilcox "resisted and tensed up, requiring the officers to use force to get him up off the bunk." *Id*.

As the officers were moving Wilcox to the wall, "he became aggressively delirious"—attempting to fight his way through four jailers, one deputy, and one corporal. Buell maintains that it "took six officers to subdue him and apply hand restraints." *Id*. At this point, Wilcox "was led to the third-floor lobby and placed in a regular chair," and Buell returned to his post "with his back to Wilcox." *Id*.

Buell maintains that Wilcox became "aggressive again." His anger escalated, and Buell contends that he feared "he would attack him from behind." *Id*. Buell then instructed Wilcox to calm down—but Wilcox refused. Other officers in the vicinity "did not immediately comply with Mr. Buell's instructions to calm Wilcox down." Wilcox refused to follow orders and "was creating a very unsafe situation in the Jail," prompting Buell to "fear[] for his safety and for the safety of the inmates and Jail staff in the vicinity." *Id*. at pg. 9. Buell argues that if Wilcox "was not contained … he or someone else would get hurt"—and that only moments before he sat in the chair, it took six officers to subdue Wilcox.

As Buell walked toward Wilcox, Wilcox "was shouting threats to Mr. Buell's family and Mr. Buell," and that Wilcox "was obviously very angry and upset," (Dkt. #53, pg. 9). Spit was flying out of his mouth because "he was yelling so much." As Buell "walked toward him, [Wilcox] was leaning forward in a manner that made Mr. Buell believe that he was about to charge." *Id*. Buell "had his arm extended with his palm open," and, "in an effort to prevent [Wilcox] from charging, Mr. Buell pushed him back with his open palm onto [Wilcox's] forehead." *Id*. Buell explains that "this was a force technique that [he] had learned in jail school." At this point, Wilcox sat down and the "situation deescalated." *Id*.

Buell insists that he "used the minimum amount of force necessary to contain this situation," which was based on his training, education, and experience. While Buell considered that Wilcox was wearing handcuffs at the time of the incident, such fact was "factored into the amount of force Mr. Buell used" and that Wilcox was not completely defenseless—as Buell was "seen inmates injure officers while wearing handcuffs." *Id*. at pg. 10. Buell contends that "any disruptive behavior such as Plaintiff's must be swiftly and decisively stopped so that the safety of the inmates and Jail employees is not placed at risk." *Id*. Ultimately, Buell maintains that Wilcox's

claim of excessive force and cruel and unusual punishment must fail—and that he is entitled to qualified immunity.

Finally, Buell forthrightly explains that Gregg County officials terminated his employment "because his supervisor said that the use of force did not comply with County policies," (Dkt. #54, pg. 20). The District Attorney recommended that he be prosecuted. Despite his termination and potential criminal prosecution, Buell insists that his use of force in question was correct because he utilized "the minimum amount of force necessary to gain Plaintiff's compliance." *Id*.

**III. Wilcox's Response**

Prior to Defendant Buell filing his motion for summary judgment, Wilcox filed a response, (Dkt. #51), to Buell's original answer. He first notes that he grieved this issue, which led to the Buell's firing. He also reminds the Court that he was sick with COVID-19 and strep throat on the day in question. Wilcox further argues that Defendant Buell is not entitled to [qualified] immunity because he acted maliciously and sadistically; he insists that Buell chose to act "in complete disregard to [his] safety and well being to maliciously and sadistically approach me as [he] was seated in handcuffs and completely unable to defend [himself], nor able to maneuver to avoid the assault," (Dkt. #51, pg. 1). Wilcox contends that Buell acted "out of pure anger and pure hate" by punching him in the "face directly between the eyes" with no regard. *Id*. at pg. 1-2. He states that Buell knew he had "seizures" and was sick with COVID-19.

Wilcox also explains that he was seen immediately after the incident by a nurse, at which point he told her that the believed he was ok, "but the punch did hurt over the next few days" and that he was sore to touch his forehead and experienced a "bad headache." *Id*. at pg. 2. He explains that under *Hudson v. McMillian*, 503 U.S. 1 (1991), "the Supreme Court overturned the 'significant injury' requirement" … "regardless of [whether] significant injury resulted," and stresses that

Buell's actions were without regard to his well-being, malicious, sadistic, and to inflict unnecessary and wanton pain. *Id*. at pg. 2-3.

## IV. Standard of Review

A court shall grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P.  In determining whether there is a genuine dispute of a material fact, the court must examine the evidence and inferences drawn therefrom in the light most favorable to the nonmoving party.  *See S.E.C. v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1994). Summary judgment is appropriate "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."  *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). "Material facts are those that might affect the outcome of the suit under the governing law." *Crostley v. Lamar Cnty., Tex.*, 717 F.3d 410, 422 (5th Cir. 2019) (internal citation and quotations omitted).

The Fifth Circuit has held that summary judgment disposition is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions.  *See Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987).  It is not the function of the trial judge—in ruling on a motion for summary judgment—to weigh the evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence.  *Id*. at 567 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

If the movant satisfies its initial burden of demonstrating the absence of a material fact dispute, then the non-movant must identify specific evidence in the summary judgment record demonstrating that there is a material fact dispute concerning the essential elements of its case for which it will bear the burden of proof at trial. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415,

5

1429 (5th Cir. 1996). The non-movant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Util., Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988).

To carry this burden, the non-movant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). All reasonable inferences are drawn in favor of the non-moving party, but the non-moving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only "a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007); *Miller v. Graham*, 447 F. App'x 549, 551 (5th Cir. 2011); *Chacon v. York*, 434 F. App'x 330, 332 (5th Cir. 2011). "Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation" will not survive summary judgment. *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016). Rather, the non-movant "must point to specific evidence in the record demonstrating a material fact issue" at the summary judgment stage. *See Mitchell v. Mills*, 895 F.3d 365, 270 (5th Cir. 2018). The non-movant cannot rest upon mere allegations or "denials of the adverse party's pleading." *See U.S. v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001).

When qualified immunity is invoked, as is here, "only evidence—not argument, not facts in the complaint—will satisfy" the burden of proof necessary to defeat summary judgment. *See Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) (internal citation omitted). Once the movant asserts immunity, the burden then shifts to the plaintiff to rebut it with more than conclusory allegations, unsubstantiated assertions, or speculation. *See Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003); *see also Miller v. Graham*, 447 F. App'x 549, 551 (5th Cir. 2011) ("Miller

has not overcome Graham's assertion of qualified immunity because he presented nothing but conclusory allegations and unsubstantiated assertions to assert his claim").

## V. Discussion and Analysis

The Court first notes that Wilcox failed to file a response to Defendant Buell's motion for summary judgment.[1] As a result, the facts outlined in Buell's motion are uncontested. A review of the summary judgment evidence, viewed in the light most favorable to Wilcox, demonstrates that the evidence before the Court could not lead to different factual findings and conclusions. Summary judgment in favor of Defendant Buell is warranted.

### 1. Excessive Use of Force

Wilcox maintains that Buell used excessive force upon him while inside the Gregg County Jail in violation of the Eighth Amendment to the United States Constitution by "punching" him in the nose while he was seated in handcuffs. He explains that he suffered from a sore nose for "several days," and a "bad headache." Wilcox also states that he "had to increase" his medication he takes for PTSD and anxiety.

It is well-settled that a pretrial detainee's rights are protected by the Fourteenth Amendment's Due Process Clause, which protects the detainee's from "excessive force that amounts to punishment." *See Graham v. Connor*, 490 U.S. 386, 395, n.10 (1989); *see also Cope v. Cogdill*, 3 F.4th. 198, 206 (5th Cir. 2021) ("The constitutional rights of a pretrial detainee are found in the procedural and substantive due process guarantees of the Fourteenth Amendment.").

The Supreme Court held that the appropriate standard for a pretrial detainee's claim of excessive force claim is **solely** an objective one. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (emphasis added). In this way, "a pretrial detainee must show only that the force purposely

---

[1] The Court notes that Plaintiff received notice of this Court's Order granting Defendant's motion for an extension of time in which to file a motion for summary judgment, (Dkt. #49), and has filed pleadings since receiving such notice.

or knowingly used against him was objectively unreasonable." *Id*. at 396-97. Under *Kingsley*, "objective reasonableness" turns on the facts and circumstances of each individual case"—and various non-exclusive factors "may bear on the reasonableness or unreasonableness involved":

> the relationship between the need for the use of force and the amount of the force used; the extent of the plaintiff's injury; any effort to temper or to limit the amount of force; the severity of the security problem; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."

*Id*. at 397. Contrary to Wilcox's assertions, because he was a pretrial detainee at the time of the incident, *Hudson* does not apply to his case. *See Hudson v. McMillian*, 503 U.S. 1, 4 (1992) (analyzing excessive force claims in the prisoner context under the Eighth Amendment).

A district court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained" and appropriately defer to "policies and practices that in the judgment of the jail officials are needed to preserve internal order and discipline and to maintain institutional security." *See Kingsley*, 576 U.S. at 397.

The Fifth Circuit Court of Appeals explained that a federal court must "look through the eyes of a reasonable officer on the scene." *See Timpa v. Dillard*, 20 F.4th 1020, 1029 (5th Cir. 2021) (citing *Kingsley*, 576 U.S. at 397).

### a. Need for Force v. Amount of Force Used

As mentioned, Wilcox does not dispute the facts of the entire incident as Buell recounts them. In particular, he does not contest that (1) jailers entered his cell after he was violently destroying property inside; (2) while inside the cell, Wilcox attempted to fight his way through six different officers that were attempting to gain his compliance; (3) once in handcuffs and while sitting in the chair shortly thereafter, he again became aggressive and articulated threats directly at Buell; (4) he refused to "calm down," despite specific orders to do so; and (5) he began yelling, full of spit, and leaned forward toward Buell in a charging posture.

8

Based on these undisputed facts, the record shows a need for force. Specifically, the undisputed facts show that Wilcox was violent moments before sitting in the chair handcuffed—refusing to comply with orders and the requiring six different jailers to gain his compliance and removal from his cell. And, once he was seated and handcuffed, he continued to maintain his aggressive behavior by yelling, threatening, and leaning toward Buell in a "charging" posture.

To the extent that Wilcox argued that he posed no threat once he was handcuffed and thus there was no need for force, (Dkt. #51, pg. 3), such does not account for Wilcox's uncontested yelling/spitting as well as leaning forward in a "charging" position toward Buell—especially given Buell's uncontested testimony that inmates have harmed jailers even while handcuffed. Accordingly, the uncontested facts reveal the need for force, which favors Buell.

Buell explains that he extended his arm with his palm open as he walked toward Wilcox and, "in an effort to prevent [Wilcox] from charging," "pushed him back with his open palm onto [Wilcox's] forehead." Conversely, Wilcox explains that Buell "punched him" in the face "directly between the eyes, (Dkt. #51, pg. 2).

Viewing the evidence in light most favorable to Wilcox, Buell's punch to his face—while Wilcox was handcuffed and claims that he was defenseless—favors Wilcox. It is well-settled that a jail official may not use force on a subdued inmate. *See, e.g.*, *Bagley v. Guillen*, No. 22-20644 (5th Cir. Jan. 10, 2024); *Newman v. Guedry*, 703 F.3d 757, 761-64 (5th Cir. 2012) (finding it objectively unreasonable for officers to injure a man whose "behavior [does] not rise to the level of active resistance."). Accepting as true that Wilcox was both handcuffed and defenseless while sitting in the char, Buell's punch to his face appears to be more restraint than necessary to gain compliance on a handcuffed prisoner. Buell's actions on a handcuffed inmate deserve no

commendation. This factor in its entirety—the need for force versus the amount of force used—ultimately favors neither party.

### b. Extent of Wilcox's Injury

Although Wilcox is correct that an inmate is not required to show "a significant injury," a pretrial detainee's *de minimis* injuries like bruises, a headache, soreness, contusions, and abrasions are insufficient to maintain an excessive force claim. *See, e.g.*, *Westfall v. Luna*, 903 F.3d 534, 547, 549-50 (5th Cir. 2018) ("Westfall's other injuries, including the abrasions and bruises, bloody urine, and high blood pressure and heart rate, which may have been caused by Trevino's actions are, based on our case law *de minimis*."); *Welsh v. Correct Care Recov. Solutions*, 845 F. App'x 311, 318 (5th Cir, 2021) (upholding Magistrate Judge's conclusion that Welsh's injuries—pain of to hand, X-rays showing no injuries, and the lack of an allegation of long-term damage—was *de minimis* and not an abuse of discretion); *cf. Cowart v. Erwin*, 837 F.3d 444, 453-454 (5th Cir. 2016) (finding contusions, a ruptured ear drum, and contusions from multiple blows as contravening "Erwin's characterization of the punches are a mere 'malevolent touch' that involved only *de minimis* force.").

Here, Wilcox explains that he suffered from a "sore nose" for several days and that he had to increase his PTSD medications as a result of the incident. Without more, such are *de minimis* injuries. *See, e.g.*, *Zavala v. Harmon*, 2022 WL 17220034, at *6 (S.D. Tex. Oct. 19, 2020); *see also Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005) (explaining that Tarver failed to show any degree of physical harm greater than de minimis and that the claim for psychological injuries fail given no showing that the psychological injury stemmed from the force complained of).  Wilcox does not raise a genuine issue of material fact that he suffered more than *de minimis* injuries, and this factor weighs in favor of Defendant Buell.

### c. Any Effort Made to Temper the Amount of Force

Wilcox does not take issue or allege that Buell used any other force than punching him in the face, once, while handcuffed sitting in a chair. Buell explains that once he pushed him back with his open palm into Plaintiff's forehead," Wilcox sat down and the situation "deescalated." He also states that he recognized that Wilcox was handcuffed while in the chair, and considered that fact, but also witnessed inmates injure officers while handcuffed. He also contends that he used less force "than he otherwise would have" because Wilcox was handcuffed. Because Wilcox alleges no other force than the "punch," this factor weighs in favor of neither party.

### d. The Severity of the Security Problem at Issue

As mentioned, Wilcox does not dispute that, moments preceding the force of which he complains, (1) jailers entered his cell after he was violently destroying property inside; (2) while inside, he attempted to fight his way through six different officers in order to gain his compliance; (3) once in handcuffs and while sitting in the chair shortly thereafter, he again became aggressive and articulated threats directly at Buell; (4) he refused to "calm down," despite specific orders to do so; and (5) he began yelling, full of spit, and leaned forward toward Buell in a charging posture.

It is well-settled that "maintaining institutional security and preserving internal order and discipline are essential goals that may require the limitation or retraction of the retained constitutional rights of both convicted and pretrial detainees. *See Bell v. Wolfish*, 441 U.S. 520, 546, 547 n.28 (1979) (noting that pretrial detainees in certain circumstances may present "a greater risk to jail security and order than convicted inmates."). When examining objective reasonableness, the district court must also account for the jail's need to manage the facility— appropriately deferring to policies and practices that in the judgment of the jail officials "are

11

needed to preserve internal order and discipline and to maintain institutional security." *Id*. (quotations omitted).

Here, none of the facts articulated by Buell concerning Wilcox's violence preceding the incident—especially having attempted to fight six different officers in his cell—or his aggressiveness and refusal to comply with orders to calm down while handcuffed in the chair are contested. The entire situation described by Buell demonstrates a recalcitrant inmate, who, by his own very actions, created a dangerous environment and risked both the safety and security of the jail. The severity of the security problem, created by Wilcox inside his cell and continued while he was handcuffed, weighs heavily in favor of Buell.

### e. The Threat Reasonably Perceived by Buell

The uncontested facts reveal that Wilcox both created and maintained a security disturbance. He first attempted to get past multiple jailers inside his cell while actively resisting. Then, while he was handcuffed and sitting in the chair, he articulated threats towards Buell while spitting, refused to comply with orders to calm down, and entered into what Buell believed to be a "charging position." Based on the uncontested evidence, a reasonable officer could have perceived that Wilcox was a continuing threat while he was handcuffed and seated. This factor heavily favors Buell. *See Kingsley*, 576 U.S. at 397 ("A court must make this determination from the perspective of a reasonable officer at the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.").

### f. Whether Plaintiff was Actively Resisting

As noted above, the uncontested facts demonstrate that Wilcox was actively resisting inside his cell before being handcuffed. Once handcuffed, the uncontested facts indicate that Buell maintained his aggressiveness—spitting while yelling, articulating threats, and leaning forward in

12

a charging position towards Buell. A reasonable officer in this circumstance could believe that Wilcox, despite his in handcuffs, was actively resisting instructions even while handcuffed. *See Martin*, 2023 WL 2874461, at *156 (finding that the sixth *Kingsley* factor weighed against the plaintiff because "there was no question that Plaintiff was [actively] resisting" instructions); *see also Amos v. Jefferson*, 861 F. App'x 596, 603 (5th Cir. 2021) (finding that officer's spraying a chemical agent against a prisoner after the prisoner "displayed repeated combativeness and belligerence," was not objectively unreasonable"). On balance, this factor weighs against Wilcox. *See Martin v. Live Oak Cnty. Jail*, 2023 WL 2874461, at *12 (S.D. Tex. Jan. 23, 2023) ("Indeed, open defiance of orders, such as that exhibited by Plaintiff, would lead a reasonable officer in Corporal Vasquez's position to believe that some quantum of force was objectively reasonable.").

### g. Culmination of All Factors

After a careful consideration of the *Kingsley* factors and Fifth Circuit precedent, Wilcox does not raise a genuine issue of material fact that the force Buell used was objectively unreasonable under these circumstances. The following facts remain uncontested: (1) jailers entered Wilcox's cell after he was violently destroying property inside; (2) while inside, Wilcox attempted to fight his way through six different officers trying to gain his compliance; (3) once in handcuffs and while sitting in the chair shortly thereafter, Wilcox again became aggressive and articulated threats directly at Buell; (4) Wilcox refused to "calm down," despite specific orders to do so; and (5) Wilcox began yelling, full of spit, and leaned forward toward Buell in a charging posture.

The severity and continuation of this security problem and threat created by Wilcox inside the jail supports a finding that Buell's use of force was objectively reasonable under the circumstances. *See Kingsley*, 576 U.S. at 399 (explaining that federal courts are to assess the

reasonableness of the force from the perspective of a jailer who is often forced to make split-second decisions in tense situations); *see also Burke v. Masters*, 2024 WL 1703085, at *9 (S.D. Tex. Apr. 19. 2024) ("The Supreme Court has observed that ensuring security and order at an institution is a permissible nonpunitive objective, whether the facility houses detainees, convicted inmates, or both.") (internal citation and quotation omitted).

Moreover, Wilcox's injuries—a sore nose for a few days, a headache, and an increase in anxiety/PTSD medications—are *de minimis*. *See, e.g.*, *Buehler v. Dear*, 27 F.4th 969, 982-83 (5th Cir. 2022) ("As for the extent of the alleged bruises, abrasions, and mental pain, the district court remarked only that Buehler's 'injuries appear relatively minor' and 'are the type that the Fifth Circuit has held to be *de minimis*.' We agree."); *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022) (holding that Solis's injuries—"her back and wrists were hurt," described as "pulled pain," and mental anguish—were properly characterized as minor); *Brooks v. City of West Point, Miss.*, 639 F. App'x 986, 990 (5th Cir. 2016) ("Brooks's additional allegation that he suffered an increase in his PTSD symptoms, which he does not support with medical evidence, does not suffice to survive summary judgment.").

Considering all of the factors as a whole, the Court finds that the force used was objectively reasonable and, therefore, not constitutionally excessive. *See Fairchild v. Coryell Cnty, Tex.*, 40 F.4th 359, 362 (5th Cir. 2022) ("Force against a pretrial detainee is 'excessive' and a violation of the Fourteenth Amendment when the force was objectively unreasonable.") (citing *Kingsley*, 576 U.S. at 396-97).

## 2. Qualified Immunity

Defendant Buell invokes qualified immunity. Wilcox has the burden to demonstrate that the defense of qualified immunity does not apply. *See Bryant v. Gillem*, 965 F.3d 387, 391 (5th

Cir. 2020); *Cunningham v. Castloo*, 983 F.3d 185, 190-91 (5th Cir. 2022). Conclusory allegations are insufficient to overcome the defense. *Williams-Boldware v. Denton Cnty., Tex.*, 741 F.3d 635, 643-44 (5th Cir. 2014); *see also Edmiston v. Borrego*, 75 F.4th 551, 561 (5th Cir. 2023) (rejecting Plaintiffs' conclusory statement).

To demonstrate the inapplicability of the qualified immunity defense, the plaintiff must satisfy a two-prong test. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The first prong is whether "the challenged conduct, viewed in the light most favorable to the plaintiff, would actually amount to a violation of [constitutional or] federal law." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (citation omitted). The second is "whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004) (citations omitted). A court may consider the two-pronged inquiry in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, Wilcox has not identified a constitutional violation. He also has not shown that qualified immunity is not warranted. Viewing the facts in the light most favorable to Wilcox, Buell punching Wilcox in the face—while certainly not commendable—was not objectively unreasonable. Because Wilcox has not identified a constitutional violation, Defendant Buell is entitled to qualified immunity.

As a final matter, Wilcox stresses that Buell's employment was terminated, and the District Attorney recommended prosecution as a result of this specific incident. But this is irrelevant. Violations of state criminal law do not necessarily equate to section 1983 liability nor a constitutional violation—and Buell's alleged failure to follow internal policies, without more, resulting in his termination does not amount to a constitutional violation. *See Myers v. Klevenhagen*, 97 F.3d 91, 95 (5th Cir. 1996).

<u>RECOMMENDATION</u>

Accordingly, it is recommended that Defendant Buell's motion for summary judgment, (Dkt. #53), be granted and that this case be dismissed with prejudice.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**So ORDERED and SIGNED this 26th day of June, 2024.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

16